It COOKS, J.,
dissenting.
I respectfully dissent from the majority’s decision to affirm the trial court’s grant of summary judgment in this matter. The majority does not address Plaintiffs allegations that the officer’s acted unreasonably in this case (which was the issue the trial court focused on in granting summary judgment), instead dismissing Plaintiffs case solely on the basis that Plaintiff “only generally alleged injury and damages in his petition.” The majority cites this lack of “ ‘specificity’ of damages, stating that other than a mention of an MRI bill that he had paid, no details were revealed regarding the nature of his alleged injury or any damages sustained.” While I note Plaintiffs deposition testimony alone might well come up short of establishing compensable damages were this a trial on the merits, I find it was sufficient to establish genuine issues of material fact at the summary level as to the existence of damages.
In his deposition, Plaintiff specifically stated he was “sure about [his] back being injured.” Plaintiff also steadfastly maintained it was his opinion that his placement on the ground on his stomach with his hands placed behind his back “is what caused his damages.” He noted several times the officers’ actions put him in “a position I’m [not] supposed to be in.” Plaintiff obviously has endured severe, life-altering past injuries to his spinal cord, rendering him a paraplegic. He has two metal Harrington Rods fused to his spinal cord for stability. I find it plausible, if not likely, that Plaintiff suffered anxiety and emotional distress over possible ^injuries caused to his spinal cord, when he was placed into what he believed to be an unsafe position by the officers. I strongly reject any argument that no genuine issues of material fact exist as to whether Plaintiff suffered any injury as a result of the incident in question. Any such determination at the summary judgment stage is premature and inappropriate.
Although the majority pretermits any discussion of the reasonableness of the officers’ actions due to its conclusion that Plaintiff failed to produce factual support on the existence and extent of damages, I will address that argument. It is undisputed that Plaintiff is a member of a protected class. He is confined to and relies on his wheelchair to travel. These factors were obvious to the officers during the incident in the Super Daq parking lot. In discussing whether the officers’ actions at the scene were “reasonable,” Defendants contend “the officers had limited information concerning Plaintiffs medical condi *845 tion.” It was not disputed that both Plaintiff and St. Julien, on several occasions, informed the officers of Plaintiffs disability and reliance on his wheelchair. At the time Plaintiff was placed face down on the parking lot ground, with his hands cuffed behind him, the officers were aware Plaintiff was a paraplegic who could only travel through use of his wheelchair. The officers were also immediately informed by Plaintiff that the position he was in was potentially harmful to him. This information, followed by the officers’ decision to keep Plaintiff in that position for approximately five minutes, certainly creates a disputed issue as to the “reasonableness” of the officers’ actions and whether the force used was excessive given the circumstances.
Defendants vehemently argue the officers’ actions were reasonable based on officer safety. A review of the transcript of the hearing on the motion for summary judgment indicates the concern over officer safety was the primary basis for the trial court’s ultimate decision to grant summary judgment in Defendants’ favor. |sThe trial court specifically asked Plaintiff the following question at the hearing on the motion for summary judgment:
What should [the officers] have done? What should or could they have done differently that would have taken care of the officers’ safety concerns because of the guns — you’ve got to get him out— and where do you put him? Where do you put him while the wheelchair is being assembled?
Considering the situation, there appear to be several alternative methods that a fact-finder could conclude were reasonable and preferable to the officers’ decision to place a cooperative paraplegic, face down on the ground with his hands cuffed behind his back, despite the fact they were alerted such a position could be harmful to him. I note there were multiple officers present at the scene. After St. Julien was removed and placed on the ground in cuffs, one of the officers could have walked to the other side of the vehicle and removed the firearm located by the driver’s seat while Plaintiff was being monitored with his hands clearly visible or otherwise secured. If the officers were still concerned about the possibility of additional weapons, at this point, one officer could have removed and assembled the wheelchair while Plaintiff was watched by another officer. Plaintiff could then have been removed from the vehicle and placed in his wheelchair. It also seems readily apparent that the officers could have removed Plaintiff from his vehicle and placed him in the rear of a police vehicle, in a seated position with his hands cuffed in the front. Lastly, the officers could have positioned Plaintiff in a seated upright position on the ground. Certainly, any of the above mentioned scenarios were easily available to the officers at no additional concern for their safety. At a bare minimum, there ‘are undoubtedly questions of fact that alternative, reasonable methods for Plaintiffs removal from the vehicle were available to the officers at the scene that would have accommodated his physical disability without posing risks of harm to him or the officers’ safety.
|4Pefendants argued the officers did in fact “modify their actions to accommodate [Plaintiffs] physical limitations, actions which placed their own safety at risk.” Defendants list the following examples as illustrative of the officers’ modified actions to accommodate Plaintiff’s disability:
[T]aking time to question [Plaintiff] about his condition and how he usually exited the vehicle, rather than immediately extracting him; officers using both hands to lift him out of the vehicle, thereby restricting their ability to use their hands to respond to a dangerous situation; and taking [Plaintiffs] wheelchair out of the car, assembling it and placing him in it, with his hands cuffed *846 in front of him, before patting him down, although the officers could and should have searched [Plaintiff] on the ground, especially as a weapon had been discovered.
These examples indicate the officers were aware of Plaintiff’s disability, and establish their realization that it was imperative they depart from standard procedure in their handling of Plaintiff. However, Defendants do not address why the officers chose to place Plaintiff in a potentially harmful position, and left him there for several minutes after being informed by Plaintiff of the harm it could cause him to remain in that position. As set forth above, there were several alternative methods the officers could have employed to secure the scene which would not have compromised officer safety. The officers’ admitted realization of the need to accommodate Plaintiff’s disability only highlights that a factfinder, under the circumstances, could find the officers’ decision was unnecessary and excessive. Thus, I would find the trial court’s grant of summary judgment, with the presence of these genuine issues of material fact, was inappropriate.